(No. 13921.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* OLIVER F. PAISLEY *et al.* Plaintiffs in Error.

*Opinion filed October 22, 1921—Rehearing denied Dec. 8, 1921.*

1. CRIMINAL LAW—*granting of a separate trial rests in discretion of court.* Whether an application for separate trial will be granted rests in the sound discretion of the trial court, and its refusal will not afford ground for reversal unless there is an abuse of this discretion.

2. SAME—*a motion for a separate trial must allege sufficient grounds and be supported by affidavit.* A motion for a separate trial of a co-defendant must set out sufficient grounds for granting a separate trial and must be supported by affidavit.

3. SAME—*what evidence is admissible on question of insolvency of defendant bankers.* In a prosecution of partners in the banking business for receiving a deposit while insolvent, it is permissible on the question of insolvency to prove that one of the defendants directed their cashier not to pay over a certain collection at once because they "needed the money," that he made false statements as to the bank's assets for the purpose of getting credit with a telegraph company, that he drew personal checks when he had no funds to his account in the bank and replaced the checks by worthless notes, and that certain assets carried on the books of the bank at

full value consisted of notes of bankrupts and of their employees, all of whom were without means to pay their obligations.

4. SAME—*what proof is generally admissible in prosecution of bankers for receiving deposit while insolvent.* Any evidence that tends to show that a bank has been organized without capital and that it has been conducted on deposits obtained and without any reference to the rights of depositors is proper in a prosecution of the bankers for receiving a deposit while the bank was insolvent.

5. SAME—*failure to deny the charge of insolvency is admissible against defendant bankers.* In a prosecution of banking partners for receiving a deposit while insolvent a bank examiner may testify that he told the defendants that they were insolvent and that they did not deny the charge, as the failure to make the denial is an implied admission of defendants' knowledge of their insolvency.

6. SAME—*when counsel for defendants cannot read to the jury opinion in former case.* In a prosecution of bankers for receiving a deposit while insolvent, counsel for the defendants are not entitled to read to the jury an opinion reversing, for errors, a judgment convicting the same defendants for receiving another deposit, where the reading of the opinion is likely to confuse the jury as to the proof in the two cases and cannot be of any benefit to them.

7. SAME—*what is not an improper reference to failure of defendants to testify.* The fact that certain testimony for the People stands uncontradicted, either by direct testimony of another witness or by facts or circumstances appearing on the trial, justifies the assumption that the testimony is true, and the State's attorney has a right to urge this point in his argument to the jury even though the defendants have not testified.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

WILLIAM FRIEDMAN, and MARSHALL SOLBERG, (COLIN C. H. FYFFE, and DAVID R. CLARKE, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWIN J. RABER, and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

In 1908 plaintiffs in error, William H. Paisley, Oliver F. Paisley and James T. Paisley, opened a private bank at 5545 Broadway, in the city of Chicago, under the name of Edgewater Bank, which was conducted as a private bank until April 11, 1914, when it was changed into a State bank, known as Edgewater State Bank. Shortly after this it moved to new quarters at 4613 Broadway. Plaintiffs in error controlled this bank until December of the same year, when they were forced by the State Auditor to surrender control to other parties. In the meantime plaintiffs in error had organized a second private bank at 5302 North Clark street under the name of Summerdale Savings Bank. July 1, 1915, they opened another private bank at the location of the old Edgewater Bank, at 5545 Broadway, under the name of North Shore Savings Bank. In August, 1916, they opened another private bank at the corner of Broadway and Grace street, which they styled the Grace Street Branch of the North Shore Savings Bank. September 19, 1916, six weeks after the opening of their last bank, plaintiffs in error voluntarily closed their doors and filed a bill in the superior court of Cook county for the appointment of a receiver. In October, 1916, the grand jury returned a number of indictments charging plaintiffs in error with unlawfully receiving deposits in these banks knowing themselves to be insolvent. They were tried and convicted of unlawfully receiving a deposit of $700 from Mrs. Margaret Basch. This judgment was reversed for errors arising on the trial and the cause remanded for a new trial. (*People* v. *Paisley,* 288 Ill. 310.) The judgment brought before us for review by this writ of error is upon the conviction in the criminal court of Cook county for unlawfully receiving a deposit of $90 from Elsa Koch. Plaintiff in error William H. Paisley was

sentenced to pay a fine of $180 and the other two plaintiffs in error were each sentenced to the penitentiary and to pay a fine of $180. The judgment of the criminal court has been affirmed by the Appellate Court for the First District.

When the crash came the total assets of the partnership, William H. Paisley & Sons, was $70,955.63, and the individual assets of William H. Paisley were $470.79, of Oliver F. Paisley $803.21, and of James T. Paisley $1428.92, making a grand total of all available assets of $73,658.55. The total liabilities were $498,095.31, of which there was due depositors $256,345.13. Plaintiffs in error had juggled figures and padded accounts brazenly and recklessly in order to conceal their insolvency from the public and the public authorities. Among the claimed assets, listed "Loans and discounts," were worthless notes signed by the Paisleys amounting to $52,240.41, and other worthless notes signed by their employees and bankrupt concerns with which they were connected, amounting to $26,108.31. Another item carried as assets under the head "Equity in Summerdale Bank building" at $18,831 was of no value. The building was worth not to exceed $16,000 and the ground was worth approximately $8000. There was against this property a $17,000 first mortgage and a $25,000 second mortgage. It is not necessary to set out any more of the details. Sufficient has been said to show the character of the assets and to show that the Paisleys were hopelessly insolvent and had full knowledge of their insolvency.

The first point urged by plaintiffs in error for reversal is that the trial court erred in overruling a motion by William H. Paisley for a separate trial. The evidence shows that William H. Paisley was a partner with his sons and that he was actively associated with them in the operation of these banks. The record shows that he was present at different times when their financial condition

was being discussed. Whether an application for separate trial will be granted rests in the sound discretion of the trial court, and its refusal will not afford ground for reversal unless it appears that there was an abuse of this discretion. *(People* v. *Covitz,* 262 Ill. 514.) There was no abuse of discretion in denying this motion for separate trial. Furthermore, such a motion must set out grounds showing reasons for granting a separate trial and the motion must be supported by affidavit. (16 Corpus Juris, 788; 19 Ency. of Pl. & Pr. 527; *People* v. *Gukouski,* 250 Ill. 231; *People* v. *Temple,* 295 id. 463.) The motion in this case not only failed to allege sufficient grounds but is not supported by affidavit, and it is therefore insufficient.

When plaintiffs in error organized the Edgewater State Bank they borrowed from seven Chicago banks more than $100,000. The largest loan was for $40,000 from the Continental and Commercial National Bank. The other loans were for smaller amounts. Stock in the Edgewater State Bank was deposited with these banks as collateral security. Each of these loans was obtained upon the representation of plaintiffs in error that the remainder of the stock had been sold. Of the 2000 shares issued, plaintiffs in error took 1350 shares. Further details of this transaction will appear in *People* v. *Paisley, supra,* at pages 317 to 321. At the time of the former trial the Edgewater State Bank was still in existence and the directors were making an honest effort to save it. The prosecuting attorney did not show in that case the actual value of the stock of the Edgewater State Bank, and the court assumed from the book value given that it was worth par. As will appear from the former opinion, the State Auditor had required that an assessment of $60 a share be levied and paid by all the stockholders of this bank. The Paisleys were not able to pay this assessment upon the stock that stood in their name. Representatives of the Edgewater State Bank and the various banks from whom the Paisleys

had borrowed money on their stock met to consider what was best to be done regarding this assessment. Three of the banks refused to pay the assessment and surrendered their stock. The State Bank of Chicago held 150 shares of this stock. It refused to pay the assessment and surrendered the stock to the Paisleys and they gave their receipt for it. The bank received no consideration whatever for this surrender. The Continental and Commercial National Bank, which held 400 shares of stock, also refused to pay the assessment and surrendered its stock without consideration. Some of the banks made arrangements whereby their directors paid the assessment and enabled the banks to hold the stock as collateral. The stock that was surrendered was delivered to a syndicate of stockholders of the Edgewater State Bank, who paid the assessment and held the stock as collateral. It now appears in the record in this case that the stock had no market value and no actual value on April 21, 1916, when it was surrendered. The persons to whom they surrendered the stock paid the assessment of $60 on each share and lost all of it. Plaintiffs in error now contend that this stock was worth more than $40,000. This contention is not based on a fair consideration of the proof in the record but on the statement made in the opinion of this court in the former case. One of the errors committed on the former trial was the refusal to give an instruction covering this transaction. Such an instruction was given on this trial and plaintiffs in error were given the benefit of every legitimate claim made by them. If the jury, in determining their solvency, had given them credit for the full amount claimed, plaintiffs in error would still have liabilities of $350,000 in excess of their assets.

Plaintiffs in error contend that the State proved other acts of misconduct which did not tend to prove the charges under this indictment. One of these irregular transactions concerned a collection for C. O. Anderson of a certificate

of deposit for $2311.87 issued by a bank in Sweden. This certificate was received for collection in July, 1916, and the collection was made immediately, but Oliver F. Paisley directed Oscar T. Miller, cashier of the North Shore Savings Bank, not to pay the cash to Anderson until January, 1917, because they "needed the money." This evidence was properly admitted. It tended to show that Oliver F. Paisley then realized his insolvency. Another irregular transaction proven was the making by Oliver F. Paisley of a false financial statement with reference to the assets and liabilities of the North Shore Savings Bank to the Western Union Telegraph Company. If the bank had at that time been financially sound it would not have been necessary to have made this false statement in order to get the business of the Western Union Telegraph Company, and this proof was therefore properly admitted, because it tended to show that Oliver F. Paisley knew that his bank was insolvent. While proof of these crooked transactions tended to create a feeling of prejudice against Oliver F. Paisley, it was not for that reason error to receive such proof. No evidence was admitted which did not go to the question of the solvency of plaintiffs in error and their banks, their knowledge of their insolvency and their connections with the management of these banks. The prejudice that was created was that which naturally comes with proof of guilt in every criminal prosecution. The State's attorney also proved that for more than a year before the final crash Oliver F. Paisley had been drawing funds from the North Shore Savings Bank by personal checks when he had no funds in the bank from which to pay these checks. These items were carried by Miller as cash. From time to time these worthless checks were replaced by worthless notes signed by Oliver F. Paisley. By this operation alone Oliver F. Paisley stole from the depositors more than $34,000. This line of proof was likewise admissible to show insolvency and knowledge of it.

The proof in this case shows that plaintiffs in error were insolvent in 1914, when they were compelled to surrender control of the Edgewater State Bank; that they were insolvent in 1915, when they organized the North Shore Savings Bank, and that they were barely able to keep the doors of their two banks open when they organized the Grace Street Branch of the North Shore Savings Bank six weeks before they went into bankruptcy. Complaint is made that the People were permitted to prove that much of the assets carried on their books at full value consisted of notes of bankrupts and of their employees, all of whom were without means to pay their obligations. All of this proof was admissible to show insolvency. Any evidence that tends to show that a bank has been organized without capital and that it has been conducted on deposits obtained and without any reference to the rights of depositors is proper in a prosecution of this kind. *People* v. *Munday*, 293 Ill. 191.

A bank examiner, Daniel V. Harkin, made an examination of the Edgewater State Bank in December, 1914. He criticised a number of loans taken over by this bank at the time it was changed by the Paisleys from a private bank to a State bank. One loan was to a bankrupt candy firm for about $20,000, another was to the Paisley's attorney for about $18,000, and others appeared equally worthless. All these loans were personally guaranteed by the Paisleys. A meeting of the directors of the Edgewater State Bank was called, at which all of plaintiffs in error were present. Harkin told the other members of the board of directors that the Paisleys were insolvent, and that he could not permit the bank to continue to do business if the Paisleys did not resign from the board of directors and surrender the management of the bank to more responsible directors. William H. Paisley was greatly agitated and with tears in his eyes said he did not think their condition was that bad. Oliver F. and James T. Paisley said

nothing but voluntarily surrendered their control of the bank. Harkin and Nathan William McChesney, one of the directors present at this meeting, both testified that they had charged the Paisleys with being insolvent and that the Paisleys had not denied the charge. Plaintiffs in error complain of this testimony, claiming that these witnesses were permitted to express the opinion to the jury that the Paisleys were insolvent. The witnesses did not testify that they were insolvent, but they testified that they had told the Paisleys that they were insolvent and that the Paisleys had not denied the charge. If the Paisleys did not think this charge was true it was the natural thing for them to deny the accusation. Their failure to deny it was an implied admission of their knowledge of their insolvency and it was proper to make this proof. *People v. Cardinelli,* 297 Ill. 116.

Counsel for plaintiffs in error attempted to read to the jury, during their argument, the opinion of this court in the former trial reversing the conviction of plaintiffs in error in the Basch case. It is clear that the purpose of counsel was to get before the jury the criticism by the court of the bankers involved in the Edgewater State Bank stock transaction and of E. J. Raber, prosecuting attorney. The record before us then seemed to justify the criticism made but the record now before us does not warrant such criticism. The banks not only lost the $100,-000 loaned the Paisleys, but the directors who tried to save the Edgewater State Bank to make the security good lost the additional $60,000. The Paisleys were insolvent when the Edgewater State Bank was organized, and its organization was a part of their fraudulent scheme to cover their insolvency by operating on borrowed capital and money of their depositors. Raber was criticised in the former opinion for his treatment of witness Oscar F. Miller, cashier of the North Shore Savings Bank. Miller was the willing tool of the Paisleys, and, of course, had

much information that was of value to the prosecution. Miller was questioned by the State's attorney and during his examination told one falsehood after another. He denied any knowledge whatever of the Anderson transaction and denied any acquaintance with Anderson. When Anderson was produced before him he admitted that he knew him, and when a letter written regarding the transaction and bearing his signature was produced he admitted that he knew all about the transaction. Raber questioned him further regarding the crooked operations of the Paisleys, and he answered falsely until driven into a corner, when he admitted his full knowledge of each transaction. Under this provocation Raber referred to him, so Miller says, as "a damned liar" and told him that he acted like a three-year-old, and that he could not understand "why in the hell the bank that he was working for had ever hired him." This is alleged to have taken place in the State's attorney's office. It did not occur in the court room. Granting that the charges are true, it does not show professional misconduct on the part of Raber. Of course, we cannot approve the profanity used. This testimony of Miller was not denied. It could not be denied except by Raber, and he was the attorney who was prosecuting the case. In view of the record and the ease with which Miller could tell falsehoods we do not consider that it was necessary for the statements to be denied. We think we have pointed out the reason counsel wanted to read this opinion to the jury and the reason the court properly refused to permit it to be read. The proof in this case is much stronger than that in the previous case, and the reading of the opinion in the previous case to the jury that sat in this case would have tended to confuse the jury and would have been of no benefit to them. In *Earll* v. *People,* 99 Ill. 123, and in *People* v. *Rees,* 268 id. 585, this court criticised the State's attorney for reading cases which tended to distract the attention of the jury

from the case at hand without throwing any light upon it. What we said in those cases applies with equal force to the request of counsel in this case. The court properly refused to permit this opinion to be read.

Charles Kramer, a collector for the Ogden Avenue State Bank, presented to plaintiffs in error two notes for payment. The Paisleys begged for more time, and a day or two later James T. Paisley came to the office of Kramer and paid him $1000 in small bills, ones, twos and fives, all old currency. Later, Oliver F. Paisley came to Kramer to see him in regard to a further extension of the notes, and Kramer remarked that it was strange that he could be running a bank without any money and asked him if he realized that it was just such things that got people into the penitentiary, and Paisley said he knew it was. The State's attorney in his argument commented on this transaction and argued that this $1000 was paid with bills that had been deposited in the banks, and called upon the defense to explain why Kramer's testimony was not denied if it was not true. Plaintiffs in error complain of this argument on the ground that it refers to their failure to testify, because no one could have denied Kramer's statements but themselves. The People have a right at all times to show that certain of their proof is uncontradicted. The fact that certain testimony stands uncontradicted either by direct testimony of another witness or by facts or circumstances appearing on the trial justifies the assumption that the testimony is true, and the State's attorney has a right to urge this point to the jury. *People* v. *Spira,* 264 Ill. 243; *People* v. *Donahoe,* 279 id. 411.

We have examined all the errors assigned by plaintiffs in error and find no merit in any of them.

The record fully justifies the verdict of the jury and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*