(No. 26998.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN, EXUM, Plaintiff in Error.

*Opinion filed January 19, 1943—Rehearing denied March 15, 1943.*

KARNS & BANDY, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and C. W. BUR-TON, State's Attorney, (A. AUSTIN LEWIS, HAROLD G. TAL-LEY, and FRED R. SCHUMAN, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, John E. Exum, alias Johnnie Romeari, hereinafter called the defendant, had returned against him, in the circuit court of Madison county, three separate indictments, charging him with larceny of property exceeding in value the sum of $15. The three cases were consolidated for trial and a jury waived. The court found the defendant guilty and in each case he was sentenced to the Illinois State Penitentiary for a term not less than one nor more than ten years and until discharged according to law with an advisory recommendation in each case that he be confined in the penitentiary for a period not less than five nor more than ten years. He has sued out a writ of error to review the judgment and one of his claims is that his constitutional rights were invaded by unreasonable search and seizure, for which reason he says the court erred when it denied his motion to suppress evidence.

Defendant, in each of the cases, filed a motion to suppress the evidence, alleging that the search of his person

and automobile constituted an unreasonable search, and violation of his constitutional rights as guaranteed by sections 2, 6 and 10 of article II of the constitution of Illinois. After hearing on the motion, it was, by the court, denied.

In support of his motion, defendant testified that he lived in St. Louis; that between one and two o'clock on the morning of March 30, 1942, he was arrested by police officers when seated in his automobile on a public street in the city of Alton; that two officers drove past, stopped, and one of them came over to his car and told him to get out; that he got out of his car and the officer searched him and asked him if he had ever been fingerprinted; that the officer then asked him if he had a driver's license and defendant displayed his driver's license. Defendant further testified that he did not know there was a camera either in the front or back seat of his car; that there was not a key-making machine and a code book of the Chevrolet Motor Company lying on the front seat; that they might have been there, but if they were they did not belong to him; that he did not see any articles on the front or the back seat of the car; that he was not asked who was the owner of the camera, key-making machine and code book at the time he got out of the car; that the other officer came over to the car; that he did not remember whether the second officer had a flashlight, and did not remember what he asked him; that the officers arrested him and he was taken to the police station where he was lodged in jail; that he told the police officers that he had one tire in the rear of his car and if there were any other tires back there he did not know anything about them.

Witnesses were called by the People and testimony was offered in opposition to the motion to suppress evidence. Officer Emmerick testified he was on duty and cruising the city in a police car with officer Eichorn; that between ten and eleven o'clock they had received information that a car on East Fourth Street had been broken into and a glove compartment taken from the car; that sometime

later, before midnight, they received a message that a car was stolen in the 1500 block on East Fourth street; that they saw defendant's car in the 1400 block on East Fourth street, about a block from where the car had been reported stolen and six blocks from where the cylinder locks had been taken; that as they drove along Fourth street, they were looking for and investigating the thefts that had been reported to them; that they noticed this car parked with a Missouri license and observed the shadow of a man leaning over the right door of the car, not under the driver's seat; that they stopped and officer Eichorn stepped over to defendant's car and asked him what he was doing, and he said he was resting; that he asked his name and defendant told him; that he asked for his driver's license which was produced by the defendant. Officer Emmerick had a flashlight in his hand which he flashed into defendant's car and, when he did so, both officers observed a camera in the rear seat, and in the front seat a code book, a small box and a key-cutting machine, all of which were in plain view. Officer Emmerick further testified that they asked defendant to whom these articles belonged and he said he did not know; that defendant's car had a Missouri license and at that time of night, with strange people, questions were usually asked; that after defendant stated he did not know to whom the articles belonged, he was placed under arrest for investigation; that was the reason they arrested him; that they wanted to investigate him after his statement that he did not know of these articles in his car; that after officer Eichorn had arrested defendant for investigation, he searched the defendant and took from him three cylinder locks; that defendant, who was a colored man, was parked in a neighborhood where colored people did not reside and his hands were gloved although the night was not cold. Officer Eichorn's testimony was substantially the same.

Defendant offered no evidence in his defense on the trial of the cause but contends, (1) that the search of his person and property was unreasonable and violated his

constitutional right; (2) that his petition to suppress evidence should have been allowed; (3) that the advisory recommendation as to his sentence is unconstitutional and void.

Defendant, in his motion to suppress, cites sections 2, 6, and 10 of article II of our constitution, but makes no argument in this court based upon section 2.

Section 6 of article II of our constitution is almost identical with the fourth amendment to the Federal constitution and reads: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated; and no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched, and the persons or things to be seized."

The portion of section 10 of article II of the State constitution invoked herein, that "No person shall be compelled in any criminal case to give evidence against himself," is nearly identical with the fifth amendment to the Federal constitution, that no person shall be compelled, in any criminal case, to be a witness against himself.

Privilege against self-incrimination is not identical with unreasonable search, (4 Wigmore on Evidence, No. 2263; *Holt* v. *United States,* 218 U. S. 245, 54 L. ed. 1021, 31 S. Ct. 2,) though they have their point of contact. The seizure or compulsory production of a man's private papers, property or effects to be used in evidence against him is equivalent to compelling him to give evidence against himself, and in a criminal case is prohibited by the constitution. When the thing forbidden by the constitution, *viz.,* compelling a man to give evidence against himself in a prosecution for crime, is the object of a search and seizure of his private papers, property, or effects, it is "an unreasonable search and seizure" within the prohibition of the constitution. (*Boyd* v. *United States,* 116 U. S. 616, 29 L. ed. 746, 6 S. Ct. 524.) The Federal courts have emphatically held

that the admission of property or papers taken from a defendant in violation of his constitutional rights virtually makes him a witness against himself, contrary to the provisions of the fifth amendment. *Boyd* v. *United States, supra; Weeks* v. *United States,* 232 U. S. 383, 34 S. Ct. 341, 38 L. ed. 652; *Gouled* v. *United States,* 255 U. S. 298, 41 S. Ct. 261, 65 L. ed. 647.

The testimony of the owners of the property described in the indictments proved that this property had been stolen from them, and defendant concedes there is no question in this case about the weight or the sufficiency of the evidence. His case is based squarely upon the motion to suppress. Nowhere in his motion is it alleged that any of the property seized is claimed to be the property of the defendant, nor does he claim any interest in it or ask for its return. The uncontradicted testimony of police officer Raymond White and police lieutenant Louis H. Waller is that the defendant disclaimed and denied ownership of all the articles found in his possession and in his automobile, except a flashlight. The property admittedly not belonging to him or being property in which he has any interest or right of possession, we are at a loss to see how he can complain either of its seizure or of its use in evidence as being a violation of his constitutional rights. Clearly, if the property is not his and he has no interest in it and no right to its possession, he is not in the position of giving evidence against himself when it is introduced as exhibits upon the trial. Such was the ruling in *Haywood* v. *United States,* (C. C. A.) 268 Fed. 795, in which *certiorari* was denied by the United States Supreme Court in 256 U. S. 689, 41 S. Ct. 449, 65 L. ed. 1172, and also the ruling in several other cases within the federal jurisdiction.

Federal decisions, definitely fixing a rule applying to the introduction of evidence obtained by illegal seizure, are cited as very applicable, inasmuch as the guaranties of immunity from unreasonable searches and seizures and that

an accused shall not be compelled to give evidence against himself, contained in the Federal constitution and in our State constitution, are practically the same. This court also in the case of *People* v. *Patterson,* 354 Ill. 313, in considering and denying a motion to suppress as evidence articles discovered by a search claimed to be illegal, stated, among other reasons for the ruling, that it was not contended by the motion, nor shown by the evidence introduced in support thereof, that the property belonged to the plaintiff in error, and there was no request to have it returned to him.

Furthermore, the code book, the key-cutting machine and the camera, which articles were taken from the front and the rear seat of defendant's car, were in full view, plainly discernible in the ray of the officers' flashlight. A search implies a prying into hidden places for that which is concealed and it is not a search to observe that which is open to view. (*People* v. *Marvin,* 358 Ill. 426.) It is not a search to observe that which is open and patent, in either sunlight or artificial light. (*Smith* v. *United States,* 2 Fed. (2d.) 715.) These articles were not discovered by search. Neither were they taken from the defendant by unlawful seizure, as defendant, disclaiming all interest in or knowledge of said articles, had no lawful right to retain their possession. Defendant's motion was for the suppression of all of the property taken from the person or the automobile of defendant. Part of this evidence being competent, the court properly denied his motion to suppress it all. *People* v. *Reid,* 336 Ill. 421; *People* v. *Walczniak,* 273 id. 76; *Mash* v. *People,* 220 id. 86; 26 R. C. L. 1056, par. 61.

Defendant urges the unlawfulness of his arrest and the consequent illegality of the search of his person and automobile. This court held in the case of *People* v. *Hord,* 329 Ill. 117, that generally where an arrest is made by an officer who has reasonable ground for believing the person arrested

is implicated in the crime, such officer has a right to arrest without a warrant and to search the person arrested without a search warrant. The guaranty of the constitution is not against all search and seizure but against unreasonable search and seizure, and it does not extend to immunity from search on arrest. Arrests upon bare suspicion are not permitted under the law. (*People* v. *Brewer*, 355 Ill. 348.) It was held in the case of *People* v. *Henneman*, 367 Ill. 151, in considering whether the police officer had in that case made an unwarranted arrest, that the officers had a right to stop and question the plaintiff in error and his companion, and if such questions disclosed facts which would tend to establish suspicion that plaintiff in error was engaged in or had been guilty of a crime, his arrest, made as a result of such belief on the part of the officers, would be a legal arrest, and a search following such an arrest would not be an unreasonable search. But in that case there were no facts, other than the place where they were seen, to indicate to the officers that they were the parties referred to by another officer as suspicious characters. Nor were there any facts shown which would cause the arresting officers to believe the arrested person was guilty of a crime. To justify an arrest by an officer without a warrant, the ground for belief that the person arrested is guilty of an offense must be such as would influence the conduct of a prudent and cautious man under the circumstances. In determining whether an officer making an arrest without a warrant had such reasonable grounds for suspicion as would justify a prudent and cautious man in so acting under the circumstances, each case must be considered upon its own facts. (*People* v. *Kissane*, 347 Ill. 385.) Whether or not the officers in this case had reasonable ground for believing that defendant had committed a crime is a mixed question of law and fact, the circumstances to show it reasonable being the facts and their sufficiency when shown being a question of law. *People* v. *Kissane, supra.*

All of the circumstances under which defendant was arrested, must be taken into consideration, including the lateness of the hour, the information the officers had received of the theft of property in the near vicinity of defendant's car, the fact that defendant was alone in his car, was not in the driver's seat but leaning toward the right front door, that he was wearing gloves on a warm night, and that he could not explain his possession of the code book, the key-making machine and the camera. We cannot say that it was unreasonable for the officers to believe, nor can we say that a prudent and cautious man would not have strongly suspicioned, under the existing circumstances, that the defendant had been engaged in the commission of a crime.

In this case the defendant was clearly proved guilty. While the constitutional limitation on searches must necessarily apply to all persons alike, it is incumbent upon us to remember that it was primarily intended as a shield to the innocent rather than as a refuge for the guilty. The salutary purpose of this constitutional provision should not be distorted by extending the meaning so as to defeat the ends of justice. (*People* v. *Marvin, supra.*) The trial court did not err in overruling the motion to suppress evidence. The defendant has been legally convicted.

The advisory opinion or recommendation incorporated in the judgment of the court that defendant be confined in the penitentiary not less than five years and not more than ten years, is unconstitutional and void. (*People* v. *Montana,* 380 Ill. 596.) The judgment is therefore reversed and the cause remanded to the circuit court of Madison county, with directions to enter a proper sentence.

*Reversed and remanded, with directions.*