(No. 30694.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CAMILE A. TABET *et al.,* Plaintiffs in Error.

*Opinion filed November 18, 1948—Rehearing denied Jan. 17, 1949.*

THOMAS & DAVIS, and RAPHAEL E. YALDEN, both of ROCKFORD, (CHARLES H. DAVIS, and HENRY H. CALDWELL, of counsel,) for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and MAX A. WESTON, State's Attorney, of Rockford, (JOHN E. SYPE, of Rockford, of counsel,) for the People.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

Plaintiffs in error, Camile A. Tabet, George Voalk and Daniel Bardell have sued out a writ of error to reverse a judgment based on a jury verdict against them in the Winnebago County circuit court. They were indicted jointly on two counts, the first of which charged larceny of a man's suit of clothes of the value of $55 and another of the value of $39.50, the property of Marion F. Ambrosius. The second count charged each with stealing the same property and also charged each with having theretofore been convicted of a felony for which he was sentenced. Motions for new trial and in arrest of judgment were overruled and the defendants were sentenced to the penitentiary.

The principal errors complained of are that the defendants were unlawfully arrested without a warrant, that evidence should have been suppressed because of unlawful search of an automobile and seizure of articles found therein, that a severance should have been granted, that counsel was unduly restricted in examination of the jurors, and that there was error in the giving, refusing and modifying of instructions.

On October 27, 1947, plaintiffs in error arrived in Rockford from Chicago about 2:00 P.M. where they visited several mercantile establishments and purchased a few small articles. During the afternoon they entered the M. F. Ambrosius clothing store where they hesitated in the front for a few minutes and then Tabet and Bardell approached a lady clerk and asked for size 34 moleskin breeches. She went to Mr. Ambrosius in the back of the store to inquire of him if such was in stock. He had never heard of breeches of that type and went forward to see the cus-

tomers. He noticed one of the men whom he later identified as Voalk handling a couple of suits and who instantly put them under his topcoat and started out the door. In making his way forward Ambrosius found an aisle blocked by the other two men and he had to cut over to another to get through. He called to Voalk saying "I am going to wait on you," but Voalk did not stop and by the time Ambrosius got outside he was nowhere to be seen. Ambrosius asked the other two men if they were with Voalk and they said "No."

The suit rack was checked by Ambrosius and he noted that two certain suits were missing. He saw these suits the next day at the police station and identified them as his property. He placed a value of $39.50 on one suit and $57.50 on the other.

The same afternoon the three plaintiffs in error appeared at the men's department in Hess Bros. store in Rockford shortly before 5 o'clock. An employee by the name of F. Vincent Johnson saw them and talked with Voalk and Bardell who were trying on a couple of garments after which they remained in the men's department for about fifteen minutes. During this time Johnson was called to the telephone where he received information from the manager of the men's department at Block & Kuhl's to the effect that there were three shoplifters in town. The description given him of the three men corresponded to the plaintiffs in error who were then in Johnson's department.

Tabet had in his possession a leatherette type bag about 18 to 20 inches long and 12 to 14 inches wide, the zipper of which was open. When Johnson returned from the telephone conversation Tabet walked out of the store, and the other two had made up their minds that the topcoat they had been looking at was not the type desired. Bardell had on a whipcord gabardine coat and as Johnson attempted to pull the fly of the coat open to look at the label, Bardell raised his arm so as to prevent it. Johnson realized that

something had taken place while he was at the 'phone where he could not see the place where the suits were. The two men went down several aisles and departed from the store. Johnson followed them out but they had crossed the street. He then saw police officer Fitzgerald and told him "There have been three shoplifters in the store—I am pretty certain they have gotten me for something." He pointed these two men out to the officer who was in uniform and who shouted to the men to stop. They looked back and then started to walk fast with the officer following them. They then started running and the officer ran in pursuit. He shouted to them twice when he was from thirty to fifty feet from them. They were traveling in the direction of the police station and were near it when overtaken.

After the officer gave chase to the two men Johnson returned to the store. About twenty minutes thereafter he again saw Tabet who had come back to the store and inquired of a friend of Johnson's if he had seen his (Tabet's) buddies. After taking the two men to the station, officer Fitzgerald returned to the store to ascertain a description of the third man and was told that this man had been back asking about his buddies. Tabet entered the store again and was watched until he stepped out the door when he was pointed out to the officer who stopped him.

No warrant had been issued for the arrest of any of the three men but they were arrested upon suspicion. When arrested Tabet had a bag in his hand and was in front of Hess Bros. store. A set of keys and a license card for a 1941 Dodge sedan were found on Tabet. He told the officers that his brother had let him off at the Hess Bros. store from a 1941 Dodge sedan. Search for that car was ordered giving the number of the license plates and soon thereafter a car bearing those plates was located but it was a 1946 Chrysler. Officers McDonnell and Hayes went to the car and by use of a flashlight saw clothing and other

articles in the back seat of the car. The keys which they had procured from Tabet did not fit this car. The rear right door appeared to be locked the first time they tried it but on the third trial it opened. This permitted them to open the right front door. In the glove compartment was a set of keys which fit the Chrysler and the officers drove it to the police station where they found in the trunk three suit cases, three suits of clothes, two leather jackets, a blue shirt and a white shirt. There were five suits altogether in the car, two of which were folded on the back seat. Two of them, the ones mentioned in the indictment, were identified as being those taken from the Marion F. Ambrosius store. The officers had no search warrant when they searched Tabet nor when they entered the car and the trunk.

Tabet testified that there was but one set of keys for the Chrysler which he had on his person and that there were no keys in the glove compartment. Voalk and Bardell did not testify. Tabet testified that on the day in question he drove the 1946 Chrysler to Rockford with George Voalk and Daniel Bardell in the car. Each had theretofore made a statement to an officer that he had come to Rockford on a bus. It appears that Tabet had also previously told the officers that he drove to Rockford in a 1941 Dodge with his brother and girl friend. He denied making that statement. He also denied examining or handling the Ambrosius suits at any time and stated he did not see Voalk or Bardell handle either of them and that he did not carry them from the store, nor did they.

According to the People's testimony Tabet asked the officers what it was worth to make a deal, and told them to make it look good and they would make it right with them. Tabet denied making any such statement. The People's testimony also shows that Voalk told the officers that if the charge was reduced to petty larceny he could cop a plea and go along and make it right with them, other-

wise he said "You go ahead and prove what you can and we will take whatever rap we get." This was not denied as Voalk did not testify.

Voalk and Bardell each told officer Hayes they had come alone to Rockford on a Bluebird bus but were advised by the officer that the Bluebird bus did not come to Rockford. Voalk stated to the officers that they had come to Rockford looking for work as window washers and expected to stay overnight at some hotel. Tabet testified "I came to Rockford for two reasons—George Voalk wanted to stop at three or four factories to see about window washing and I was going to see about getting routes established for the juice business. I wasn't going to see anybody until the next morning. Bardell was going to contact someone about washing windows but did not before 5 o'clock." No toilet articles or night clothes were found in the suit cases and there is no evidence that they had interviewed any prospective employers or that they had made any arrangements for staying that night at any hotel.

Tabet said that the Chrysler car was locked all around when he left it. His brother testified that he drove the Chrysler from Rockford to Chicago on November 4 or 5, 1947, and when he arrived in Chicago the lock on the right rear door was not working properly. A locksmith testified that he examined the car on December 13, 1947, and found that the lock on the right rear door and on the trunk appeared to have been forced open.

Plaintiffs in error say that because there was no warrant for their arrest or for the search of the automobile both were illegal and that their motion to suppress the evidence should therefore have been allowed. They cite section 6 of article II of our State constitution and section 4 of division VI and section 3 of division VIII of the Criminal Code, (Ill. Rev. Stat. 1947, chap. 38, pars. 657 and 693,) in support of this contention.

The constitution provides against unreasonable searches and seizures. Section 4 of division VI of the Criminal Code provides for arrest without a warrant when a criminal offense is committed or attempted in the presence of an officer or a private person, and by an officer when a criminal offense has in fact been committed and he has reasonable ground for believing that the person to be arrested has committed it. Section 3 of division VIII provides the places and property that a search warrant may command the officer to search in the day time, etc.

It will be noted that the constitutional guarantee is against unreasonable searches and seizures. If then the search and seizure in this case were not unreasonable the constitutional provision has not been violated. Before any arrest was made a crime had been committed; suits had been stolen. The plaintiffs in error were each taking part in the commission of the acts complained of in such manner that each is liable for the acts of the others. The arresting officer was informed by F. Vincent Johnson, an employee in the Hess Bros. store; that there had been three shoplifters in the store and that he was pretty certain they had gotten him for something and he pointed out two of them, Voalk and Bardell, who upon being requested by the officer to stop, started walking fast and later broke into a run. It developed later that Johnson's idea was correct, that two suits had been stolen by these men from his department, and prior to that they had stolen two suits from the Ambrosius store. Tabet was the last one arrested after he had gone back to the Hess Bros. store looking for his buddies and the officer was informed that he was one of the three.

An officer has a right to arrest without a warrant where he has reasonable grounds to believe that the person arrested is guilty of a crime where, in fact, a crime has been committed. *People* v. *Davies,* 354 Ill. 168; *People* v. *Doody,*

343 Ill. 194; *People* v. *Reid,* 336 Ill. 421; *Carroll* v. *United States,* 267 U.S. 132.

The guaranty of the constitution is not against all searches and seizures without a warrant but against unreasonable search and seizure and does not extend to an immunity from search and seizure on arrest. (*People* v. *Barg,* 384 Ill. 172; *People* v. *Exum,* 382 Ill. 204.) It is our opinion that the arrest without a warrant in this case was justified and proper.

It has been held that where the arrest without a warrant is justified the accompanying search of the person is also justified. (*People* v. *Exum,* 382 Ill. 204; *People* v. *Reid,* 336 Ill. 421; *People* v. *Hord,* 329 Ill. 117,) and that where one is legally arrested for an offense, what is found upon his person, or in his control, which it is unlawful for him to have, and which may be used to prove the offense, may be seized and held as evidence in the prosecution. *Carroll* v. *United States,* 267 U.S. 132; *People* v. *Brown,* 354 Ill. 480.

None of the plaintiffs in error claimed ownership of the suits in question nor did any of them ask for their return. It has been held under such circumstances that the accused cannot complain of the seizure or of the use of the property seized against him. (*People* v. *Exum,* 382 Ill. 204; *People* v. *Patterson,* 354 Ill. 313.) There was no error in denying the motions to suppress.

It is claimed by plaintiffs in error that the statute (chap. 38, par. 693,) indicates that search of an automobile without a warrant is unlawful. The search was made after the arrests had been lawfully effected. Under the facts in this case and the law applicable thereto this statute does not apply. The statute of 1874 provided that warrants might issue for the search of any house or place. Automobiles were not then in use and could not have been in the minds of the legislature. The statute was amended in 1933 (chap. 38, pars. 691 and 693,) to provide for the

search of an automobile for a pistol, revolver or other fire-arms. There is no statute which says an automobile cannot be searched and, as before stated, no constitutional right of plaintiffs in error has been violated.

Complaint is made that the court did not grant a sever-ance. Plaintiff in error Tabet moved for a severance of the action and for a separate trial. A like motion was filed by Bardell and Voalk. All the abstract shows is that Tabet's motion was made "upon the grounds, among others, that the defenses of Camile Tabet and that of Daniel Bar-dell and George Voalk, are antagonistic." The motion of Bardell and Voalk was made "upon the grounds that the defense of Camile Tabet is antagonistic to that of Daniel Bardell and George Voalk." No grounds are specified and it is not shown in what manner they are antagonistic. The trial court has much discretion in the matter of grant-ing severances and unless we can see that the discretion has been abused its action will not be held error. Motion for a separate trial should set out the grounds upon which it is based. *People* v. *Wood,* 306 Ill. 224; *People* v. *Pais-ley,* 299 Ill. 576.

Complaint is made that counsel for Tabet was unduly restricted in his examination of the jurors. The abstract shows that one of the jurors was asked if he had ever been employed in a store. The court merely suggested that counsel not proceed along that line of inquiry stating "it is now 10 minutes to 5 and counsel has spent the entire day selecting the jury and four have not been selected at this time." It will be observed that the court did not rule that no such question could be asked but merely made the above suggestion that it was not necessary to go into the family life of the juror. This was not error.

Finally, plaintiffs in error complain of the giving, refus-ing and modifying of instructions. The abstract does not recite that the instructions as therein enumerated are all of the instructions which were given or tendered on behalf

of plaintiffs in error or the People. The Supreme Court is not called upon to consider an assignment of error based upon the giving or refusing of instructions where the abstract does not show the above information. *People* v. *Terracco,* 346 Ill. 423; *People* v. *Ball,* 333 Ill. 104; *People* v. *Gawlick,* 350 Ill. 359.

The original abstract sets out seven instructions given on behalf of the People and six given on behalf of plaintiffs in error. Just above the latter set the abstract has this explanatory note: "(In the following instructions the words in italics were lined out and those in parentheses were inserted by the trial court.)" The record does not recite the modification of any instruction. There are some words lined out and some words inserted in the instructions as shown by the record, but we cannot tell when or by whom the changes were made. The explanation as made in the abstract is not in the record and consequently the court has not certified to the modifications as stated in the abstract.

Plaintiffs in error filed a supplemental abstract of 26 pages showing 16 refused instructions and 50 given instructions. It is not recited on whose behalf the instructions were given or who requested the giving of those which were refused. The complete index to this supplemental abstract, however, reads:

PAGE
"Instructions (Refused) for the People.......... 1-8
Instructions (Given) for Defendants............ 8-27."

It would seem to us that the instructions refused were those requested by plaintiffs in error rather than by the People and that a large number of the given instructions were given on behalf of the People and not all on behalf of the plaintiffs in error. We cannot, however, assume such to be the fact. There is not a record page shown in any part of the supplemental abstract. All of the instructions set out in the original abstract are duplicated in the

supplemental. In the supplemental abstract there is no modification of any instruction shown. It would appear that those given were not modified but were given as requested. In this condition of the abstract we would not be justified in reversing the case because of alleged error in the giving, modifying or refusing of instructions.

Other points complained of were not argued and are therefore waived. In our consideration of the whole record before us we cannot say that it is free from error, but we believe substantial justice has been done and that there is no error shown which would require reversal. The judgment of the lower court is therefore affirmed.

*Judgment affirmed.*