(No. 32819.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ABRAM PERRY, Plaintiff in Error.

*Opinion filed November 18, 1953—Rehearing denied Jan. 18, 1954.*

CHESTER THOMSON, and WILLIAM R. BRANDT, both of Bloomington, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and CLIFFORD N. COOLIDGE, State's Attorney, of Bloomington, (WENDELL E. OLIVER, FRED G. LEACH, and HARRY L. PATE, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

Plaintiff in error, Abram Perry, was convicted by a jury in the county court of McLean County of the crime of unlawfully possessing slot machines and a fine of $500 was imposed by the court. By writ of error he seeks a review of his conviction. Prior to the trial a motion was made to suppress evidence consisting of four slot machines on the ground that they had been illegally seized in violation of the rights of plaintiff in error guaranteed by section 6 of article II of the constitution of the State of Illinois and the fourth amendment to the constitution of the United States. A hearing was had upon this motion, evidence being given both on behalf of the People and of plaintiff in error. The trial court denied the motion and, though many errors have been assigned, the action of the trial court in denying the motion to suppress is the only assignment argued on this appeal. Since the contention of plaintiff in error involves a fairly debatable constitutional question which was passed upon by the trial court, we have taken jurisdiction. See *People* v. *McGowan,* 415 Ill. 375.

The record of the hearing on the motion to suppress shows that the machines in question were taken from the premises of the Holder Community Social Club of Holder, Illinois, on the night of June 15, 1952. This club was a corporation organized under the laws of this State as a nonprofit enterprise. It occupied a large converted barracks building, thirty to forty feet wide and seventy-five to eighty feet long, in the main part of the town of Holder. At the time in question the club had 2854 members, paying a fee of $1. Signs were posted indicating that it was a private club for members only and that no others were to be admitted. Plaintiff in error was manager and president of the club and one of its organizers.

On the evening in question the sheriff of McLean County ordered two of his deputies, Elmo Poshard and Ralph Skidmore, to go to the club premises to determine whether gambling was taking place there. They arrived at the club after dark and found the doors to the building open and numerous people inside. The officers entered the building, walked to a counter and ordered cokes. While they were seated at the counter, plaintiff in error approached them and conversed with them. The conversation was mostly about the weather, it being a hot night. During the conversation, the officers noticed some slot machines against the north wall of the building. Poshard said to plaintiff in error: "I see you have some slot machines." Perry said: "Yes, sir," Poshard said: "I guess we will have to take them." Poshard then left the premises but Skidmore remained. Poshard returned to Bloomington where he secured search warrants and made arrangements with a trucker to haul the machines. When Poshard returned to the club premises, plaintiff in error met him at the door, identified himself as Abe Perry and stated he was the manager of the club. Poshard read the search warrant to Perry and Perry suggested that Poshard have the truckers go to the south door as it would be easier to

get the machines there. Poshard testified that plaintiff in error helped move the machines. Perry was not arrested at the time the machines were removed by the deputies. He was arrested on a warrant on June 27, 1952.

The only person testifying for plaintiff in error on the motion to suppress was his wife. She testified that the club was a nonprofit social club organized under the laws of the State of Illinois; that her husband was a member of the club; that the premises from which the machines were taken were the club premises and that the machines were the property of the club.

Counsel for the People do not contend that the search and seizure were legal. Their position in the trial court and here is that plaintiff in error has no standing to object, because his constitutional rights were not invaded. The trial court sustained this view, noting that the defendant did not claim ownership or right of possession either of the premises searched or of the property seized; that the evidence showed that the machines were the property of the club, insofar as they could be the property of anyone, and that the premises searched were the property of and in possession of the same corporation.

The provisions of the fourth amendment to the United States constitution and those of section 6 of article II of the constitution of this State are substantially the same. The fourth amendment provides: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Section 6 of article II reads: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated: and no warrant shall issue without probable cause, supported by affidavit, particularly de-

scribing the place to be searched, and the persons or things to be seized." It will be observed that neither of these constitutional provisions by its terms bars the admission of evidence obtained by its violation. However, in aid of the effectiveness of the fourth amendment, the Federal courts have long since adopted the rule that evidence obtained in violation of the rights protected cannot be received against the person whose rights were infringed. *Weeks* v. *United States* 232 U.S. 383, decided by the United States Supreme Court in 1914 settled the so-called Federal "exclusionary rule." The principle then announced has been followed by an unbroken line of decisions, too numerous to be cited here. Since the decision of this court in *People* v. *Castree,* 311 Ill. 392 (1924), there can be no doubt that the courts of this State are committed to the same rule. The reason for the exclusionary rule, as often announced by the courts, is that if evidence seized in violation of one's constitutional rights were permitted to be introduced in evidence against him, he would, in effect, be compelled to give evidence against himself, and his privilege against self incrimination guaranteed by the fifth amendment to the United States constitution and section 10 of article II of the Illinois constitution would be violated.

Since the exclusionary rule is based upon the constitutional privilege against self incrimination, the courts, in applying it, have held that it is available only to one whose constitutional rights have, in fact, been invaded by the illegal search and seizure. An accused does not have standing to prevent the admission of evidence obtained by an unlawful search and seizure which did not infringe his own personal rights protected by the constitution. (*Goldstein* v. *United States,* 316 U.S. 114.) The numerous decisions of the United States Circuit Courts of Appeals announcing this rule may be found collected in Note 285 to the text of the fourth amendment in the United States Code Annotated. Some of the more recent are: *Casey* v.

*United States*, 191 Fed. 2d 1; *United States* v. *Blok*, 188 Fed. 2d 1019; *United States* v. *Lagow*, 159 Fed. 2d 245, cert. denied, 331 U.S. 858; and *United States* v. *Ebeling*, 146 Fed. 2d 254.

In the case now before us the conclusive proof submitted at the hearing on the motion to suppress the evidence was that the premises searched were those of the Holder Community Social Club, a corporation, and that the slot machines seized were also the property of that organization. Is plaintiff in error in a position to object to the search and seizure and has he such an interest in the premises searched, or the property seized, sufficient to enable him to prevail in his contention that the evidence should have been excluded? The evidence shows that plaintiff in error was the manager of the corporation as well as its president. In *Lagow* v. *United States*, 159 Fed. 2d 245, a corporation and Lagow, its sole shareholder and officer, were prosecuted for the sale of a used automobile at a price in excess of the ceiling fixed by law. The court held that the business records of the corporation had been unlawfully seized and ordered that they might not be used upon the trial of any indictment which might be filed against the corporation, but it denied that relief to Lagow saying (at page 246) : "When a man chooses to avail himself of the privilege of doing business as a corporation, even though he is its sole shareholder, he may not vicariously take on the privilege of the corporation under the Fourth Amendment; documents which he could have protected from seizure, if they had been his own, may be used against him, no matter how they were obtained from the corporation. Its wrongs are not his wrongs, its immunity is not his immunity." In *United States* v. *DeVasto*, 52 Fed. 2d 26, Federal officers seized a truck containing beer belonging to a corporation on a public highway. They also entered the offices of the corporation and seized its books and records. The court held that while the seizure of the truck

and beer might be illegal as to the driver of the truck and the corporation itself, it was not illegal as to the officers and managers of the corporation, and that, as to the books and papers, though the corporation was in a position to object, the officers and managers were not. It is our conclusion that the fact that an individual accused may be an officer of the corporation whose premises are illegally searched and whose property is illegally seized does not give him the right to object to the search and seizure or cause the exclusion of the evidence thus obtained.

As manager of the club, plaintiff in error was an employee of the corporation. In *United States* v. *Mandel,* 17 Fed. 2d 270, employees of the lessee of certain premises were charged with the illegal possession of alcoholic liquor and the instruments used for its manufacture. The evidence was seized in a raid by Federal officers and taken from the custody of the defendants. The legality of the search and seizure was questioned. The government offered to prove that the defendants were employees only and did not own either the premises searched or the articles seized. The court held that, if such facts were made to appear, the defendants could not object to the admission of the evidence; that mere physical custody of incriminating evidence was not enough to entitle them to invoke the protection of the constitution. The court observed that the rights of the defendants to be secure in their persons, their homes or their private effects had not been impaired in the slightest degree and that the effect of admitting the evidence was not to compel any of the defendants to give evidence against himself. To the same effect is *Kelley* v. *United States,* 61 Fed. 2d 843.

Plaintiff in error points to what he considers to be a paradoxical situation: that he could be so far in possession of the machines as to be charged with illegally possessing them and yet not have such an interest in them as would enable him to cause their exclusion. But one can have suffi-

cient custody and control to warrant conviction of the unlawful possession of illegal instrumentalities and yet not have sufficient interest therein to enable him to raise the question of unlawful search and seizure. (*United States* v. *Mandel*, 17 Fed. 2d 270; *Kelley* v. *United States*, 61 Fed. 2d 843.) In the case last cited the court observes (at page 848): "The conviction on the fifth count does not seem to have been regarded very seriously by the Court, as the punishment imposed was a $10.00 fine. This count refers to Kelley and Horfeldt having in their possession stills intended for use in violating the National Prohibition Act. Counsel suggest that the government is blowing hot and cold in urging that Kelley did not have sufficient interest in the property to invoke the Fourth Amendment but did have sufficient possession to be guilty of the offense. We think there is nothing paradoxical about such situation. The difference in the two positions is the difference between a lawful and an unlawful possession. This property was contraband. Kelley may have had no interest in the property and yet be engaged in using it to violate the law. One could have sufficient custody and control as to warrant conviction of unlawful possession of the instrumentalities for the manufacture of intoxicating liquors and yet not have sufficient interest therein to entitle him to raise the question of unlawful search and seizure." Though the facts show that plaintiff in error was in actual custody of the contraband machines at the time of their seizure, and the proof of such facts would warrant his conviction, it does not follow that he has an exclusionary interest in the illegal instrumentalities.

Counsel for the People point to the fact that plaintiff in error in his motion for suppression does not claim ownership either of the premises searched or the property seized; that he has never demanded the return of the machines. This court has held that where a defendant does not claim ownership of the property alleged to have been illegally

seized, nor request its return, he cannot complain of the seizure or the use of the property seized against him. (*People* v. *Edge,* 406 Ill. 490; *People* v. *Tabet,* 402 Ill. 93; *People* v. *DeMarios,* 401 Ill. 146; *People* v. *Exum,* 382 Ill. 204.) In his motion to suppress, plaintiff in error alleges he is a member of the club and as a member has an interest in the machines, but he does not request their return. The legal sufficiency of the motion itself may, therefore, be questioned. We choose, however, to base our opinion on the broader proposition that the proof adduced at the hearing on the motion shows without any doubt that the premises searched and the property seized belonged to the Holder Community Social Club, a corporation, and that plaintiff in error, neither as manager nor president of the club, has sufficient interest to cause exclusion of the evidence, since his personal rights protected by the constitution have not been violated. It cannot be said that he has been placed in the position of having been compelled to give evidence against himself.

Plaintiff in error has cited *United States* v. *Jeffers,* 342 U.S. 48, as being *contra* to the views herein expressed. In that case the proof showed that while the defendant had no interest in the premises searched, he did have an interest in the cocaine seized. In his motion to suppress he claimed ownership of the contraband cocaine and requested its return. The court holds that it is not necessary that the accused have or claim an interest in both the premises searched and the property seized. It is enough that he claim ownership in the latter. There is nothing in that decision which can aid the plaintiff in error here.

The judgment of the county court of McLean County will, therefore, be affirmed.

*Judgment affirmed.*