THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN TEAGUE, Defendant-Appellant.

(No. 57578;  )

First District (5th Division)—August 24, 1973.

*Modified upon denial of rehearing December 21, 1973.*

Terence J. Anderson, of Chicago, (Goldberg, Weigle, Mallin & Gitles, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane, Richard Petrone, and William D. Wolter, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court as modified upon denial of petition for rehearing:

After a jury trial defendant was found guilty in July of 1964 and sentenced to a term of 30 to 60 years on a charge of rape and a concurrent term of 5 to 10 years on a charge of robbery. On appeal his conviction and sentences were affirmed. A post-conviction petition was dismissed without an evidentiary hearing and the Illinois Supreme Court reversed and remanded (41 Ill.2d 151) with directions that a hearing be held "at which the trial judge may be fully apprised as to the defendant's representation at his trial and as to the admissibility of the challenged evidence and its significance." Following this decision, an evidentiary hearing was held and the trial court again denied the petition. On appeal our Supreme Court again ordered the cause remanded with directions to hold a new hearing and to provide the time and opportunity prior thereto for defendant's counsel to consult with him so that his grievance could be recast in proper legal form. Subsequent thereto another evidentiary hearing was held and the petition was again denied.

Defendant then filed an appeal with the Illinois Supreme Court which transferred the matter to this court. He raises two issues, (1) whether evidence used by the State had been unlawfully obtained and (2) whether appointed counsel's failure to make a motion to suppress the use of this evidence, alone or coupled with other alleged failures, deprived defendant of his right to effective assistance of counsel.

At trial Mrs. Barbara Oliver testified that on the morning of December 30, 1963, she was on her way to work at about 5:30 A.M. and, as she entered the elevator at the 11th floor of a building where she had been visiting her mother, a man, later identified as defendant, was standing in the elevator. She saw his face and said "good morning" to him. The elevator stopped at the 5th floor and defendant told her "This is a stick-up. Don't make a sound or I will shoot you." He did not exhibit a gun, but kept his left hand in his pocket leading her to believe he had a weapon. At his direction she left the elevator and both proceeded down the corridor to the entrance of a laundry room on the 5th floor. The

room was open and an inside light was on and apparently remained on during the entire occurrence. Defendant pushed her into a metal caged area inside the laundry room and asked for her money. When she said she had none he reached into her brassiere with his right hand. At this time he was facing her standing about a foot or two away. She pushed him and he then choked her to the extent that she momentarily passed out. She next remembers being on her knees and being pushed to the floor and then defendant pulled off one of her pants legs and raped her. Afterwards he took one dollar from her coat pocket and her wrist watch and some change from her purse. He then locked her in the metal cage and left. The entire occurrence lasted about 10 or 15 minutes.

On January 5, 1964 she twice identified photographs of defendant at police headquarters, initially from motion pictures of a group of about ten persons who moved across the screen, one at a time, and later that day from a collection of about 15 photographs in a police book. On January 13, 1964, at a police station at 48th and Wabash, in a line-up with four other males of his race, she identified defendant as the man who had raped and robbed her.

In her original description to the police of the man who had raped her she said he had "a rash over his entire face, wore a brown leather jacket, waist length, black army boots, no hat, needed a hair cut." At trial she identified defendant as her assailant and testified that a jacket and boots, which were admitted into evidence, were those worn by defendant at the time of the rape.

Defendant and his brother James testified they were visiting their parents in Momence, Illinois at the time the rape took place. They had gone there with Betty McBride and her three children. Defendant also testified that he never had a rash on his face and although he occasionally wore the jacket and boots which had been admitted into evidence, they were actually the property of James. Defendant's parents were available during trial, but neither was called to support his alibi testimony.

At the trial defendant also testified that he was involved in two line-ups, the first on January 13, 1964, at a police station at 48th and Wabash and he states that Mrs. Oliver identified him at this time only after a policeman had pointed him out to her. He also testified that there was a second line-up on January 14th at the 11th and State Street police headquarters and at that time Mrs. Oliver identified his brother James as her assailant and not him. Police officer Richard Dwyer testified at the trial and at the post-conviction hearing that Mrs. Oliver was not present during the January 14, 1964 line-up at 11th and State which concerned a different crime and a different complainant.

Police officers Dwyer and Henry Kaminski testified at trial that on

January 13, 1964 Mrs. Oliver positively identified defendant from a line-up of five males of his race who were about the same height and weight and that defendant was not wearing the jacket or the boots at that time.

At the post-conviction hearing defendant testified that immediately before the January 13th line-up he was placed in a small room with Mrs. Oliver at a police station at 57th and Cottage Grove where police officers told her about him and showed her the leather jacket and boots which they said had been taken from him. Officer Dwyer testified at the hearing that defendant was first identified by Mrs. Oliver in a line-up January 13th at 48th and Wabash without the leather jacket or boots and later that day the police took defendant to 57th and Cottage Grove where a statement was taken from Mrs. Oliver while defendant was in the same room and at that time they exhibited the leather jacket and boots to her.

*OPINION*

Defendant first contends that the brown leather jacket and the boots were improperly admitted into evidence because they were the result of unlawful searches and seizures. Defendant testified that on January 13th two police officers, having been admitted by another occupant, were waiting with drawn guns and arrested him when he entered the apartment in which he lived with his brother and Betty McBride and her three children. One of the officers testified that he asked defendant before they left the apartment whether he could look through his clothing and that defendant "showed me a closet and there I found a pair of army type boots which I took along with me." Later, defendant drove his own car with the officer to a police station and there the officer asked him for his keys which were given to him. The officer then searched the trunk and found a brown leather jacket.

■■  After defendant's trial in 1964, the U.S. Supreme Court, in *Chimel v. California* (1969), 395 U.S. 752, held that a warrantless search to be constitutionally valid should be limited to the person of the arrestee and the area "within his immediate control." In the instant case neither the closet nor the automobile trunk could be considered as areas within defendant's immediate control so that under *Chimel*, in the absence of consent, the searches would have been unreasonable. The Supreme Court, however, in *Williams v. United States* (1971), 401 U.S. 646, held that the principle expressed in *Chimel* was not retroactive. *Chimel* had overruled *Harris v. United States* (1947), 331 U.S. 145, and *United States v. Rabinowitz* (1950), 339 U.S. 56, both of which stood for the general principle that a lawful arrest would justify a warrantless search beyond the immediate reach of the person arrested.

In *Williams*, the defendant was arrested in his residence pursuant to a warrant with an extensive warrantless search of his entire house conducted by eight officers. The Supreme Court sustained the search and seizure of heroin on the premises. In *Elkanich v. United States*, which was collaterally decided with *Williams*, defendant was arrested by three agents in his apartment without a warrant but with probable cause. The agents waited about 15 minutes for three other agents, all of whom then extensively searched the apartment. The court sustained the search and seizure of marked money which had been used to purchase narcotics.

■■ Here, there is no contention by defendant that his arrest was without probable cause and it would appear that under the pre *Chimel* rule, as expressed in *Harris, Rabinowitz, Williams,* and *Elkanich,* the searches and seizures were lawful. Defendant points out, however, that the Illinois courts have consistently limited the scope of a permissible search incident to an arrest to that which "is reasonably necessary to protect the officers from attack, to prevent the escape of the prisoner, or to discover the fruits of the crime * * *." *People v. Alexander,* 21 Ill.2d 347, 172 N.E.2d 785 (1961).

■■ On the rationale of *Alexander* defendant argues, and we agree, that without his consent, considering the charge here (rape), the searches of the apartment and the car two weeks after the crime were unreasonable, in that they were made to obtain evidence rather than to protect from attack, prevent escape or discover fruits of the crime. However, the State argues that defendant consented to the searches. Consent constitutes a waiver of the constitutional privilege against unreasonable search. (*People v. Harris,* 34 Ill.2d 282, 215 N.E.2d 214.) It is also well established that the consent must be clear and without duress or coercion. *People v. Haskell,* 41 Ill.2d 25, 241 N.E.2d 430.

The question of whether there was consent was not passed upon by the trial judge because defendant's attorney did not move to suppress the use of the boots or jacket or object to their admission into evidence. At the post-conviction hearing defendant testified that his coat was already on the floor of the apartment when he arrived and that he did not give permission to the police to search the closet or his car. He testified that he gave his car keys to the officer who said he wanted to check whether defendant had a key to the laundry room where the rape had occurred.

The credibility of the testimony in a post-conviction hearing, as in other cases tried without a jury, is a matter for the trial judge to determine and unless it is manifestly erroneous his determination should be upheld. (*People v. Caise,* 38 Ill.2d 486, 231 N.E.2d 596.) There, a post-conviction petition alleged, *inter alia,* that defendant was ineptly represented by the public defender, his trial counsel. Only the defendant and

his trial attorney testified in that case and the hearing judge found he was adequately represented and that he suffered no substantial denial of his constitutional rights. At p. 489 the court stated:

"[W]e note that a post-conviction proceeding is civil in character and in such a proceeding the petitioner has the burden of showing that he was deprived of a substantial constitutional right. [Case cited.] While the petitioner's allegations, if true, would have justified relief under the Post-Conviction Hearing Act, the evidence in support thereof consisted solely of his own testimony, which was directly contradicted in material part by that of the Public Defender and the transcript of the original proceedings. * * * It is apparent that the trial judge at the instant hearing found the testimony of the Public Defender more credible."

In the instant case only defendant and his trial attorney testified at the hearing and defendant stated he did not give consent to the searches and seizures. It is noted, however, that the transcript of the trial testimony was considered, without objection, by the hearing judge from which it appears a police officer testified at the trial defendant had shown him the closet where the officer found the boots and, subsequently, when he asked defendant for his keys they were given to him and he then found the jacket in the trunk of the automobile. In addition, defendant's trial attorney, at the hearing, testified to his belief that consent had been given. He stated "to the best of my recollection, I was led to believe there was a consent." His belief is further apparent from the following questions he asked of police officer Kaminski at the trial:

Q. "And when you asked him if you could look in his closet, he agreed to let you look, isn't that right."

A. "Yes, sir."

Q. "And when you asked him later at the police station if you could look in his car, he gave you the keys, isn't that right?"

A. "I asked him for the keys."

Q. "And he gave you the keys?"

A. "Yes, sir."

Q. "And up to that time, then, that you took him to the police station, he was cooperative, isn't that right?"

A. "Yes, sir."

Neither Betty McBride nor any of the three children who were in the apartment at the time of defendant's arrest were called to testify concerning the search of the closet. Betty was an adult, but the ages of the children do not appear in the record.

Defendant contends that the consents given were the product of his submission to police authority. We do not dispute that police question-

ing and custodial surroundings can produce an inherently coercive atmosphere. However, in the case at bar there is no evidence of any submission to overbearing police authority—either from the nature of the questioning or the environment in which it took place. There is no reason to believe, under circumstances such as are present here, that defendant's responses to the policeman's questions were not voluntary.

■■ The hearing judge, after reviewing the transcript of the trial and considering the credibility of the testimony of defendant and his trial counsel, properly concluded that defendant had given consent for the searches and found that defendant's constitutional rights were not violated.

We turn now to defendant's principal contention on appeal that he was deprived of his right to a fair trial and the effective assistance of counsel. He argues that the question of the legality of the searches and the seizures should have been challenged by a motion to suppress the boots and the jacket or by objection to their admission into evidence because, if either action had been successful in the trial court, he believes that the State's case more than likely would have been inadequate to convict.

He points out that his trial counsel did not move to suppress or object to this evidence because he was under the mistaken belief that under then existing law he could not do so because the defendant was not the owner of the boots and the jacket. Defendant states that at the time of his trial in 1964 the law did not require a proprietary or possessory interest in the property seized in order to suppress and he maintains that these failures on the part of his trial counsel, that is, to move to suppress or object to the evidence, deprived him of a crucial defense. He also alleges other errors of his counsel contributed to his inadequacy, namely, (1) that he failed to call his parents to corroborate his alibi testimony that he was with them in Momence, Illinois at the time of the occurrence, and (2) that he failed to object to alleged improper argument of the State.

Initially, we point out that in situations where a contention might have been raised in the original appeal but was not, it is considered to have been waived. (*People v. Armes*, 37 Ill.2d 457, 227 N.E.2d 745; *People v. Collins*, 39 Ill.2d 286, 235 N.E.2d 570.) This application of the law is relaxed only where "fundamental fairness" so dictates. (*People v. Weaver*, 45 Ill.2d 136, 256 N.E.2d 816.) In *Collins*, one of the contentions of defendant in his post-conviction petition was, as here, that his court appointed public defender was incompetent to the degree that he did not have proper representation. The Illinois Supreme Court affirmed a dismissal of the petition and, after noting that the question of competency had not been raised on the original appeal, said at p. 289:

"The petitioner did not raise the issue of the competency of his trial counsel in that appeal, thereby waiving it, and he cannot now use the Post-Conviction Hearing Act as a device to obtain another hearing upon such constitutional claims."

Here, in the original appeal of his conviction, *People v. Teague*, 66 Ill. App.2d 338, 214 N.E.2d 522, defendant did not raise the issue of the competency of his trial counsel. He was represented by different appointed counsel on that appeal and his conviction was affirmed. Subsequently, a post-conviction petition was filed by the public defender for alleged violations of his constitutional rights, in that (1) illegally seized evidence was admitted, and (2) he was not competently represented. The State's motion to dismiss, based upon the failure to raise the question on appeal, was granted. We have already pointed out that the Illinois Supreme Court here has twice reviewed appeals from orders denying post-conviction petitions and on each occasion remanded with directions to hold hearings.

■■ Although *Collins* is authority to dismiss this appeal because the question of the adequacy of representation was not raised on the original appeal, nevertheless, because of the history of the petitions here and because defendant's trial counsel was court appointed, we deem it "not inappropriate" to consider defendant's contentions. *People v. McNeil*, 53 Ill.2d 187, 188, 290 N.E.2d 602.

■■ Defendant points out, and we agree, that a duty is imposed on the court to see that counsel assigned by it has sufficient ability and experience to fairly represent defendant, present his defense and to protect him from undue oppression. (*People v. Blevins*, 251 Ill. 381, 96 N.E. 214.) However, the basic requirements of due process are not changed. While a client is entitled to a fair trial, his attorney is not expected to be infallible. (*United States ex rel. Weber v. Ragen* (7th Cir.), 176 F.2d 579.) It is only where such legal assistance amounts to no representation at all that the constitutional requirement of adequate representation will demand a reversal. (*People v. DeSimone*, 9 Ill.2d 522, 138 N.E.2d 556.) The guidelines provided in *People v. Morris*, 3 Ill.2d 437, 121 N.E.2d 810, require that defendant clearly establish (1) the actual incompetency of counsel, as reflected in the manner of carrying out his duties as a trial attorney, and (2) subsequent prejudice therefrom without which the outcome would probably have been different. This framework for reference in *Morris*, which involved a court appointed trial attorney, is tempered by the court's advice at p. 449 that each case "will have to be judged on its particular facts as they appear in the context of the proceeding under consideration."

Defendant's trial counsel's rationale for failure to move to suppress

the evidence or to object to its admission was predicated on his belief that the legality of the search and seizure could not be challenged without asserting a proprietary interest and to assert this in a supporting affidavit would be inconsistent with his defense. Defendant argues that this was a mistake of law on his part which went to the very essence of the defense, consequently affording representation of such low caliber as to amount to no representation at all.

Defendant relies heavily on the California Supreme Court decision in *People v. Ibarra*, 60 Calif.2d 460, 386 P.2d 487, where appointed counsel failed to object to the admission into evidence of heroin seized in the search of an apartment where defendant was found. His attorney informed the court that he had no grounds to object "since defendant had denied this was in his possession or taken from him." In California, the rule of law was clear that defendant could challenge the legality of the search and seizure, even though he denied the heroin was taken from him and asserted no proprietary interest in the premises that were entered. The California Supreme Court stated at p. 465, 466:

> "This rule should be a commonplace to any attorney engaged in criminal trials. * * * Counsel's failure to object precluded resolution of the crucial factual issues supporting defendant's primary defense. It thereby reduced his trial to a farce and a sham."

Here, as in *Ibarra*, defendant contends that his counsel misconstrued the requirement of standing necessary to exclude illegally seized evidence and, in order to evaluate this contention, it is appropriate to consider the rule as it was at the time of defendant's trial in 1964.

The exclusionary rule was developed in the Federal arena and was ultimately extended to the states in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684. *Mapp* and other decisions deemed it necessary to prohibit the use in court of illegally seized evidence in order to effectuate the underlying policy of the Fourth Amendment. Illinois had adopted this rule prior to *Mapp*. (*People v. Castree*, 311 Ill. 392, 143 N.E. 112.) One justification advanced for the exclusionary rule was that the introduction of illegally seized evidence often negated the privilege against self-incrimination. (*People v. Perry*, 1 Ill.2d 482, 116 N.E.2d 360.) However, no Fourth Amendment privilege arose where the search or seizure is directed at someone else (*Hatch v. Reardon*, 204 U.S. 152, 27 S.Ct. 188), so that a defendant would not have standing to prevent the admission of evidence, although unlawfully seized, where it did not infringe on his own personal rights. *People v. Perry*, 1 Ill.2d 482, 116 N.E.2d 360; *People v. Edge*, 406 Ill. 490, 94 N.E.2d 359.

Prior to its decision in *Jones v. United States* (1960), 362 U.S. 257, 80 S.Ct. 725, the Supreme Court had allowed lower courts to formulate the

requisites "for standing" with very little interference. Thus, "standing" was denied to invitees and guests, *Gaskins v. United States* (D.C. Cir.), 218 F.2d 47, and employees who, though in "control" or "occupancy", lack "possession". (*Connolly v. Medalie* (2nd Cir.), 58 F.2d 629.) The necessary interest was variously described as "ownership in or right to possession of the premises," (*Jeffers v. United States* (D.C. Cir.), 187 F.2d 498, *aff'd.* 1951, 342 U.S. 48), or one having "dominion" in the premises searched (*McMillan v. United States* (8th Cir.), 26 F.2d 58), or one who is a "licensee" or "lessee". (*United States v. De Bousi*, 32 F.2d 902.) Illinois supported these positions by requiring some possessory or proprietary interest in either the property seized or the premises searched. *People v. Perroni*, 14 Ill.2d 581, 153 N.E.2d 578; *People v. Exum*, 382 Ill. 204, 47 N.E.2d 56.

In *Jones*, also relied heavily upon by defendant, the U.S. Supreme Court in 1960 ruled it was not necessary to allege a proprietary interest so that anyone with a legitimate purpose on the premises where a search occurs could challenge the introduction in court of the seized evidence. However, two points in the opinion mitigated its impact, (1) the court prefaced its ruling with the remark that the petitioner's standing was to be decided by reference to rule 41(e) of the Federal Rules of Criminal Procedure, and (2) the court noted at p. 261:

> "[O]rdinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, * * * that he himself was the victim of an invasion of privacy. But prosecutions like this one have presented a specific problem."

The "specific problem" in *Jones* was the dilemma of defendant who was charged with a narcotics violation and a motion to suppress certain evidence, were it to require a proprietary or possessory interest, would prove an element of the crime.

The question thus raised here concerns the second of the two mitigating points in *Jones*, that is, was it "entirely proper" to require defendant to show that his own personal constitutional rights had been infringed by the illegal search and seizure in order to move to suppress the evidence. It appears that the Illinois courts, at the time of defendant's trial, answered this question in the affirmative. The requirement of standing established in prior Illinois decisions was not eliminated by *Jones* in those cases where the possession of the evidence did not constitute an essential element of the crime but rather was simply evidence of guilt. *People v. Kelley* (1961), 23 Ill.2d 193, 177 N.E.2d 830, *cert. denied* 1962, 370 U.S. 928; *People v. Mayo*, 19 Ill.2d 136, 166 N.E.2d 440; *People v. French*, 33 Ill.2d 146, 210 N.E.2d 540.

490

After defendant's trial, and consequently not applicable thereto, our Supreme Court, in *People v. DeFilippis* (1966), 34 Ill.2d 129, 214 N.E.2d 897, held that a defendant could move to suppress, without asserting a proprietary or possessory interest, even though possession was not an element of the crime. Subsequently, *DeFilippis* was expressly overruled on this specific point in *People v. McNeil*, 53 Ill.2d 187, 192, 290 N.E.2d 602, which stated:

> In the light of both *Alderman*[1] and *Jones*,[2] and the rationale of the dissent in *DeFilippis*, we adhere to the rule requiring a defendant to establish the manner in which his constitutional rights have been violated before permitting him to challenge the validity of a search and seizure. We find that *Jones* compels no deviation from this rule and that *Alderman* requires its observance. Accordingly, any language in *People v. DeFilippis* [case cited] to the contrary is hereby overruled, * * *."

■■ In view of the foregoing it is our belief that the rule of law, at the time of defendant's trial, did not require standing where possession of the articles seized was an essential element of the crime, but that standing was required where possession was not an element of the crime but merely evidence of guilt. In the instant case, although the possession of the articles was not an element of the crimes of rape and robbery, they were evidence of guilt for which standing was required in a motion to suppress. The presence of the boots in the closet where he lived and the jacket in the trunk of his car gave defendant the necessary standing.

In his well written brief defendant asks this court to apply the principles expressed in *Ibarra* that where appointed counsel is unaware of a rule of law basic to the case and fails to suppress or object to evidence and as a result precludes resolution of crucial factual issues supporting defendant's primary defense, he has not provided assistance of counsel to which defendant was constitutionally entitled.

In *Ibarra*, defendant was convicted of the possession of heroin and there appears no question that the failure to object to its admission was crucial to his defense. However, we believe that the admission of the boots and jacket in the instant case was not "crucial" to the defense as it was in *Ibarra*. As we have heretofore pointed out, the searches and seizures were valid. Assuming, however, that a motion to suppress had been granted or that at trial an objection to the admission of the boots and jacket into evidence had been sustained, there still remained the testimony of Mrs. Oliver that she observed defendant for 10 to 15 minutes at

---

[1] *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961.

[2] *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725.

close range and identified him twice: on January 5 from motion pictures and photographs and again at the January 13 line-up. On neither occasion was he wearing the boots and jacket and there is testimony from the police officer that she was not shown those articles before these identifications which were followed by a positive trial identification. Clearly, the admission of the boots and jacket did not go to the heart of the defense. The positive testimony of Mrs. Oliver alone was sufficient to sustain the conviction, *People v. Watkins,* 46 Ill.2d 273, 263 N.E.2d 115, whereas in *Ibarra,* where defendant was charged with possession of heroin, the admission of the heroin went to the very core of the defense. In view of the foregoing, we do not believe the *Ibarra* principles are controlling here.

Furthermore, it appears that trial counsel did not challenge the evidence because of his belief that a proprietary interest was required when he stated "in my judgment [a motion to suppress], would have been inconsistent with our defense." The defense strategy of trial counsel was the result of an amalgam of considerations, namely; his belief that defendant had given consent to the searches, his strategy was to show defendant cooperated completely with the police, in allowing the officer to look in the closet and in giving him his car keys, as evidence of his complete lack of guilt; he had been told by defendant that witnesses would be available to testify that the articles did not belong to him and that witnesses would be available to testify that defendant loaned his automobile to others, and any one of whom might have been the user of the jacket found in the trunk; he had been told that defendant had no rash on his face, although Mrs. Oliver had stated her assailant had a rash all over his face; he believed that the identification of defendant was subject to disbelief because he had been told she had identified defendant's brother at one line-up; he was aware of the alibi testimony that defendant was in Momence, Illinois at the time of the occurrence. We note from the record that trial counsel stated that if in his judgment he believed any benefit would have resulted from a motion to suppress he would have made it.

■■ The manner and scope of trial counsel's examination of witnesses and his general conduct during the trial, indicate, in our opinion, that he was generally informed in the law and legal procedures and, in the light of the facts and circumstances here, we do not believe that his failure to move to suppress was a mistake of such significance that, as defendant contends, he was denied the effective assistance of trial counsel. (23 C.J.S. Criminal Law, par. 982(8).) See also, *People v. Ashley,* 34 Ill.2d 402.

Defendant alleges other errors evidencing inadequacy of trial counsel. (1) The failure to call either of defendant's parents to corroborate the

alibi testimony of him and his brother. The record discloses that trial counsel, after first stating that their testimony would be cumulative, later said "perhaps the word cumulative is incorrect. I didn't feel the father would make a convincing witness." The father testified at the post-conviction hearing that defendant was in Momence on the date of the crimes. We believe that the decision not to call either of the parents of defendant to corroborate his alibi was also an exercise of judgment on his part. (2) Trial counsel did not object to the testimony of a police officer that when defendant was asked where he was on the date of the crime he did not tell the officer he was at the home of his parents in Momence. This testimony was improper (*People v. Rothe*, 358 Ill. 52, 192 N.E. 777), however, we do not believe that substantial prejudice resulted therefrom. (3) He failed to object to certain statements made in the closing argument of the State. We note that in the original appeal (*People v. Teague*, 66 Ill.App.2d 338) the question of the improper closing argument of the State was raised and we agree with the finding of that court which stated at p. 346:

> "A review of the prosecutor's argument satisfies us that it did not exceed the bounds of fair argument. We find nothing in the argument sufficient to require reversal."

Before a conclusion of inadequate representation can be reached defendant must demonstrate the actual incompetence of counsel as reflected by the manner in which he carries out his duties as trial counsel and it must further appear that substantial prejudice results therefrom, without which the outcome would probably have been different. (*People v. Harper*, 43 Ill.2d 368, 253 N.E.2d 451.) In *People v. Newell*, 48 Ill.2d 382, 268 N.E.2d 17, it was stated at p. 387:

> "[M]atters going to the exercise of judgment and discretion and trial tactics are insufficient to establish the incompetence of counsel."

See also, 24 C.J.S., Criminal Law, par. 1443, cited with approval in *People v. Morris*, 3 Ill.2d 437, 121 N.E.2d 810, where it was stated:

> "[A]s a general rule, a new trial may be granted where the incompetency of counsel is so great that accused is prejudiced and prevented from fairly presenting his defense, and a new trial sometimes is granted because of some serious error on the part of such attorney in the conduct of the case; and in this respect accused's application will be treated more favorably when the attorney is one appointed by the court than when the attorney is one selected by himself.
>
> However, unless accused is prejudiced and thereby deprived of a

fair trial, a new trial does not necessarily follow from either the attorney's incompetency or his neglect, * * *."

We believe, from this record, defendant here has not shown substantial prejudice by reason of alleged failures of his trial counsel.

From our further consideration of the professional competence of trial counsel, as determined from a complete review of the record, we believe that there is no substantial basis for a finding of inadequacy of representation. If we were to conclude otherwise, then, for such a result to benefit defendant, we also have to conclude that defendant's next attorneys, who were appointed to handle the one appeal to which defendant was entitled as a matter of right (Raymond, Mayer, Jenner & Block), were also incompetent for not having raised the point now presented as to the incompetency of defendant's trial counsel. It is true, as pointed out by the Supreme Court, that appellate counsel could not have argued that the evidence in question was improperly admitted because no objection at trial had been made thereto, but this very lack of objection was available on the appeal as to the point that defendant was denied the effective assistance of counsel. In fact, the admissibility of the questioned evidence has been suggested by the Supreme Court as "the only significant problem in the case" (41 Ill.2d 151, 152) upon the resolution of which, after a hearing, the issue of the competency of trial counsel was to be determined. This court is familiar with the high degree of professional competency of the firm which presented the first appeal, and we are unable to recognize anything in the trial or the appellate record in this case which would lead us to believe that either the appellate counsel or the trial counsel acted in an incompetent manner in representing this defendant.

For the reasons stated, we conclude that the hearing judge did not err in denying defendant's post-conviction petition.

Accordingly, the judgment is affirmed.

Affirmed.

DRUCKER, P. J., and ENGLISH, J., concur.